FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 02, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

VALERIE L.,[1]

          Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

          Defendant.

No.   1:22-cv-3033-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Valerie L. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ failed to address eleven lay-witness statements that are largely consistent with Plaintiff's symptom reports and the treating neurologist's medical opinion, this matter is remanded for further proceedings.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

## I. Five-Step Disability Determination

A five-step evaluation determines whether a claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4] Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5] Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[6] Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. § 404.1520(a).

[3] *Id.* § 404.1520(a)(4)(i), (b).

[4] *Id.* § 404.1520(a)(4)(ii), (c).

[5] *Id.* § 404.1520(a)(4)(iii), (d).

[6] *Id.* § 404.1520(a)(4)(iv).

[7] *Id.* § 404.1520(a)(4)(v), (g).

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[8] At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[9]

## II.    Background

Plaintiff filed a Title 2 application alleging disability beginning December 1, 2017, alleging severe headaches and low-back pain.[10] After the agency denied her application initially and on reconsideration, Plaintiff requested a hearing before an ALJ.[11] ALJ Gregory Moldafsky held a telephonic hearing in January 2021, during which Plaintiff and a vocational expert testified.[12]

Plaintiff worked as a nurse until 2016, then took care of her elderly father until he died in March 2017, and then began taking care of her elderly mother, with the assistance of her brother and others.[13] Plaintiff testified that starting around December 2017, even with medication and limiting "triggering" foods, she suffered from weekly migraine headaches.[14] Plaintiff also testified that low-back

---

[8] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[9] *Id.*

[10] AR 240–41.

[11] AR 167–88.

[12] AR 117–47.

[13] AR 124, 130.

[14] AR 125–27, 133.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

pain limited her activities and energy and required her to rotate positions every 30 minutes.[15]

After the hearing, the ALJ denied Plaintiff's disability application.[16] As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2017, at which age she was 50.

- Step one: Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2017, through her date last insured.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease (DDD) of the lumbar spine, tension-type headaches, and migraine headaches.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with the additional limitations:

    > claimant could occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could occasionally stoop, balance, kneel, crouch, and crawl; could never work at unprotected heights; was limited to no more than occasional

---

[15] AR 129–33.

[16] AR 12–28.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

> exposure to extreme cold, extreme heat, fumes, odors, or other pulmonary irritants; and was limited to an environment with no more than a moderate noise level.

- Step four: Plaintiff could perform past relevant work as an office nurse.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cashier II, mail clerk, and cafeteria attendant.[17]

In reaching his decision, the ALJ found the opinion of Plaintiff's treating neurologist, Tony Lee, M.D., not persuasive because it was unsupported by treatment notes and was inconsistent with the record.[18] The ALJ also found the reviewing opinions of Merry Alto, M.D., and Norman Staley, M.D.—that the record contained insufficient evidence on which to evaluate Plaintiff's claim prior to her date last insured—not persuasive because the record was sufficient to assess Plaintiff's RFC.[19]

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those

---

[17] AR 15–24.

[18] AR 22.

[19] AR 21–22.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

symptoms were inconsistent with the medical evidence and her daily activities.[20]

The ALJ did not mention the lay statements submitted by Plaintiff's brother, aunt, uncle, friends, neighbors, or mother's caregiver.[21]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[22] Plaintiff timely appealed to the Court.

### III.   Standard of Review

The Court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error."[23] In conducting its limited review, the Court considers the entire record and upholds the ALJ's

///

//

/

---

[20] AR 21.

[21] AR 307–18.

[22] AR 1–6.

[23] 42 U.S.C. § 405(g); *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

findings "if they are supported by inferences reasonably drawn from the record."[24] Further, the Court may not reverse an ALJ decision due to a harmless error.[25]

### IV.    Analysis

**A.    Lay Witnesses: Plaintiff establishes consequential error.**

The ALJ did not discuss the eleven lay statements from Plaintiff's relatives, friends, and neighbors.[26] The Commissioner argues that the ALJ need not have discussed the lay statements because the regulations do not require the ALJ to discuss lay statements. The Court disagrees; the ALJ committed consequential legal error by not discussing the lay statements.

The regulations set forth different requirements for consideration of medical opinions versus nonmedical evidence, such as lay statements. For medical opinions, the ALJ is to consider specific factors and must articulate how he considered two of

//

/

---

[24] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up).

[25] *Molina*, 674 F.3d at 1111, 1115.

[26] AR 307–18 (letters in support).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

these factors—supportability and consistency.[27] The other factors include relationship with the claimant, specialization, and whether the medical source has familiarity with the other evidence in the claim or an understanding of the social-security disability policies and evidentiary requirements.[28] These other factors must be considered by the ALJ but the ALJ need not articulate how these factors were considered unless the ALJ finds that two or more medical opinions about the same issue—but not in agreement as to the opined limitation(s) for that issue—were both equally supported and consistent with the record.[29]

In comparison, an ALJ is "not required to articulate how [he] considered evidence from nonmedical sources using the [medical-opinion] requirements . . . ."[30] But while the ALJ need not utilize the medical-opinion articulation requirements when considering evidence from nonmedical sources, the regulations do *not* state that the ALJ is not required to consider lay statements. Instead, the regulations specify that—except for some specifically excluded items not encompassing lay statements about the nature, frequency, or intensity of a claimant's symptoms—

---

[27] 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

[28] *Id.* § 404.1520c(c).

[29] *Id.* § 404.1520c(b)(2), (3).

[30] *Id.* § 404.1520c(d).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

the ALJ "will consider all evidence in [the] case record when [making] a determination or decision" as to disability.[31]

This is because "friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [a claimant's] condition."[32] Therefore, "[l]ay testimony as to a claimant's *symptoms* is competent evidence," which must be taken into account.[33] Thus, a lay statement about a claimant's symptoms and how an impairment affects the claimant's ability to work "*cannot* be disregarded without comment."[34] This requirement is consistent with the directions in the Program Operations Manual System (POMS), which

---

[31] 20 C.F.R. § 404.1520(a)(3). *See also* 20 C.F.R. §§ 404.1520b(c), 404.1513(a)(4).

[32] *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

[33] *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis in original). Competent evidence is evidence tending to prove or disprove a matter in issue. Black's Law Dictionary (11th ed. 2019).

[34] *Nguyen*, 100 F.3d at 1467 (emphasis in original). *See also Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (requiring the ALJ to explain his interpretation of the evidence to allow the court to meaningfully review the ALJ's reasoning); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

directs the ALJ to articulate findings as to lay statements "when evidence from [a] nonmedical source is material to other analyses or conclusions in a claim."[35] Thus, the ALJ must consider lay statements and make findings as to the lay statements about the Plaintiff's symptoms. Although these findings need not be detailed, the ALJ "must give reasons that are germane to each witness" and supported by substantial evidence to permit meaningful review.[36]

Here, by failing to mention the eleven lay statements, the ALJ erred. The statements are competent evidence that should not have been disregarded without comment. Several of the statements were from individuals who have known Plaintiff for a lengthy period, spanning before the alleged disability onset date of December 1, 2017. The witnesses have observed Plaintiff suffering from migraines for years, that her migraines can last for more than a day, and that she needs to lay down in a dark, quiet room for hours when she has a migraine.[37] And several observed Plaintiff with back issues limiting her functioning.

While failure to discuss a lay statement may not always result in a consequential error, the ALJ's failure to discuss how he considered the eleven lay statements is consequential on this record. Whether Plaintiff's migraines and back conditions became disabling before her date last insured of December 31, 2017, is

---

[35] POMS DI 24503.020D.

[36] *Dodrill*, 12 F.3d at 919.

[37] *See* AR 307–18.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

critical.[38] These lay statements largely corroborate Plaintiff's migraine and back-pain symptom reports as well as Dr. Lee's medical report opining that Plaintiff would miss 4 or more days of work per month due to migraines and back pain.

The ALJ discounted Plaintiff's symptom reports about the migraines during the relevant disability period of December 2017 because:

> the [medical] record as a whole does not support the claimant's testimony of frequent migraines until July 2019, at which time she reported having 2–3 migraines per week and even sought emergency treatment. Finally, the contemporaneous reports of claimant's daily activities, as described above, which suggest she was providing around-the-clock home health care for her parents in 2017, are inconsistent with the claimant's testimony of the frequency and intensity of her migraine headaches during 2017.

Without the ALJ mentioning the eleven lay statements, it is unclear whether he considered the statements by individuals who knew Plaintiff during December 2017 when discounting Plaintiff's testimony that she suffered migraines—and back pain—during December 2017. The lay statements indicate that Plaintiff suffered migraines, even with medication and restricting her soy intake, and that she needs to lay down during a migraine.

---

[38] *See* Social Security Ruling (SSR) 18-01p: Determining the Established Onset Date in Disability Claims. *See also Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing.").

Because it is unclear whether the ALJ considered the lay statements when assessing the medical record, Plaintiff's symptom reports, her daily activities, and Dr. Lee's medical opinion, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."[39] Moreover, the vocational expert testified that if an individual misses more than one day of work per month that they would not be employed.[40] The ALJ's silent discounting of the lay statements constitutes reversible error.

**B.     Dr. Lee's Medical Opinion: The ALJ must reevaluate on remand.**

Plaintiff argues the ALJ failed to properly assess treating neurologist Dr. Lee's medical opinion. Dr. Lee began treating Plaintiff for her migraines in March 2017, seeing Plaintiff about every 3–8 months.[41] In October 2020, Dr. Lee completed a medical opinion on which he stated that, since the alleged onset date of December 1, 2017, Plaintiff suffered from lumbar spondylolistheses, DDD of the lumbar, migraines, and tension headaches. Dr. Lee opined that Plaintiff must lay down for a couple of hours in the afternoon and would miss 4 or more days of work per month.[42]

---

[39] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

[40] AR 145–46.

[41] AR 420–45, 451, 574–95, 600–09, 614–17, 622–31, 636–40.

[42] AR 571–73.

The ALJ did not find Dr. Lee's opinion persuasive because 1) the treatment notes did not support the exertional limitations or the need to lay down or miss work due to back pain in 2017, 2) there was no motor-strength or gait deficit mentioned in his examination notes in 2017 and early 2018, 3) the treatment notes did not reflect contemporaneous reports by Plaintiff of frequent headaches or migraines, and 4) the record did not show exacerbation of back pain, corresponding physical deficits, or complaints of frequent migraines until well past December 2017.[43]

Plaintiff argues the ALJ erred by failing to give clear and convincing reasons for discounting Dr. Lee's uncontradicted treating opinion. The Commissioner argues that, based on the 2017 regulations, the ALJ need not have given clear and convincing reasons but instead must simply explain whether the medical opinion was supported by and consistent with the record, which the ALJ did.

The ALJ's analysis is governed by the 2017 regulations. Therefore, the ALJ was required to consider and evaluate the persuasiveness of Dr. Lee's uncontradicted medical opinion and support such findings with substantial evidence and meaningful articulation, but the ALJ did not need to provide clear and convincing reasons for discounting Dr. Lee's opinion as Plaintiff suggests.[44]

---

[43] AR 22.

[44] 20 C.F.R. § 404.1520c(a), (b). *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Because this matter is being remanded for failure to discuss the lay statements, the ALJ is to reassess the persuasiveness of Dr. Lee's opinion on remand. When reevaluating Dr. Lee's opinion, the ALJ is to consider, minimally, the supportability and consistency of the opinion and Dr. Lee's relationship with Plaintiff and his specialization.[45] Supportability and consistency are the most important factors, and the ALJ is required to explain how both factors are considered.[46] And the ALJ's findings must be supported by such *relevant* evidence as a reasonable mind might accept as adequate to support a conclusion.[47]

It is not relevant to discount Dr. Lee's opinion for a reason that is not responsive to his opinion about Plaintiff's back pain and migraines.[48] In addition, the ALJ's consideration of Dr. Lee's opinion should not be unduly influenced by the fact that Dr. Lee's treatment notes did not evidence a diagnosis of low-back pain, spondylolisthesis, or degenerative disc disease until March 2019. This is because "medical evaluations made after the expiration of a claimant's insured status are

//

/

---

[45] 20 C.F.R. § 404.1520c(c)(1)–(5).

[46] *Id.* § 404.1520c(b)(2).

[47] *Ford v. Saul*, 950 F.3d 1141, 1153–54 (9th Cir. 2020); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014).

[48] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

relevant to an evaluation of the pre-expiration condition."[49] Before Dr. Lee issued his opinion in 2020, he reviewed the 2018 lumbar-spine MRI and was thus aware of lumbar conditions that corroborated Plaintiff's reports of back pain. Moreover, the 2018 MRI findings—and 2018 x-ray findings—were consistent with the October 2017 x-ray findings, which predated the December 1, 2017 alleged onset date.[50] The October 2017 x-ray revealed marked convex lumbar curve, moderate degenerative joint disease at L3–4 and L4–5, grade 1 L4 spondylolisthesis, and L5 retrolisthesis on S1. The October 2018 x-ray showed multilevel lumbar spondylosis and facet arthrosis with dynamic instability evidence at L3–4 and L4–5, given the retrolisthesis of L3 on L4 and anterolisthesis of L4 on L5, and prominent hypertrophic changes involving the facet joints of the lower lumbar spine, especially at the L4–L5 and L5–S1 levels.[51] And the 2018 MRI revealed:

---

[49] *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.1988)), *superseded on other grounds by regulation*, 20 C.F.R. pts. 404 & 416.

[50] AR 436–39. Moreover, Plaintiff was receiving regular chiropractic treatment for lumbar conditions before December 2017 during which she often reported back pain, and then she resumed treatment for her lumbar conditions after changing insurance in 2018. AR 403–16, 518–23, 729.

[51] AR 416, 541.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

- L5/S1 moderate spondylosis with right posterior facetal 7 mm synovial cyst.
- L4/L5 moderately severe spondylosis with left far lateral foraminal disc fragment and moderately severe bilateral facet arthrosis that results in anterolisthesis of L4 and L5. Moderate bilateral osteophytic foraminal narrowing.
- L3/L4 moderately severe spondylosis with small central disc herniation and central canal stenosis. Mild bilateral osteophytic foraminal narrowing.[52]

Given that Dr. Lee was aware of the imaging results reflecting the lumbar conditions and he had treated Plaintiff since before the alleged onset date, the ALJ is to reconsider on remand whether the record supports an onset of disability before the date last insured of December 31, 2017.[53] In addition, on remand, to ensure that the ALJ's consideration of Dr. Lee's opinion is supported by such relevant evidence as a reasonable mind might accept as adequate to support a

---

[52] AR 414–15.

[53] *See* SSR 18-01p (recognizing that "[t]he date we find that the claimant first met the statutory definition of disability may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records, but we will not consider whether the claimant first met the statutory definition of disability on a date that is beyond the period under consideration").

conclusion, the ALJ must consider both the waxing and waning evidence pertaining to Plaintiff's headaches.[54]

**C.     Symptom Reports: The ALJ must reevaluate on remand.**

Because the ALJ's failure to consider the lay statements requires remand, the Court need not address each of Plaintiff's arguments that the ALJ erred when assessing her symptom reports. Nonetheless, on remand, the ALJ may not discount Plaintiff's symptom reports merely because she returned to see the neurologist in 8 months rather than the recommended 6 months. Without additional evidence inferring that this 2-month discrepancy was consistent with a pattern of Plaintiff failing to seek treatment, this 2-month discrepancy does not serve as substantial evidence to discount Plaintiff's headache reports, as there is no indication that the 2-month delay impacted Dr. Lee's course of treatment or Plaintiff's symptoms. The ALJ must also consider that Plaintiff's course of treatment may have been impacted by her change in insurance/providers and ability to afford treatment.[55]

---

[54] *See, e.g.*, AR 523 (reporting a mild headache on December 14 and 20, 2017, and a migraine on December 22, 2017); AR 522–23 (reporting at least 2 headaches in July 2017, a migraine and mild headache in August 2017, a 2-day headache in October 2017, and a headache in November 2017).

[55] AR 729. *See Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995); SSR 18-3p: Failure to Follow Prescribed Treatment.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 17

In addition, the ALJ must more meaningfully explain how the identification of a soy allergy minimized the number of headaches that Plaintiff suffers, as several medical records continued to reflect headaches notwithstanding diet modification.[56] Finally, when assessing whether Plaintiff's symptom reports are inconsistent with her daily activities, the ALJ must consider that Plaintiff had help from her brother, neighbors, and in-home help when caring for her mother, and whether such assistance, the setting, and/or other factors allowed for greater flexibility than would be found in the workplace.

### D.  Remand for further proceedings.

Plaintiff seeks a remand for payment of benefits. However, further proceedings are necessary because disability during the at-issue period of December 2017 is not clearly established.[57]

On remand, if the ALJ needs clarification from lay witnesses as to the frequency and intensity of Plaintiff's headaches during—or near—the at-issue period, the ALJ is to develop the record in that regard. Additionally, the ALJ

---

[56] *See, e.g.*, AR 574 (reporting 2–3 migraines a week); AR 591 (reporting migraines every 4 days); AR 627 (reporting 4 migraines a week); AR 578 (reporting 6 migraines the prior month); AR 614 (reporting 3 headaches the prior month and one the day before); AR 622 (reporting 1 headache a week).

[57] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

should consider asking Dr. Lee to clarify why he opined that the limitations were present since December 2017.

### V.     Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

4. This matter is **REVERSED and REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

5. The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 2nd day of March 2023.

*Edward F. Shea*
EDWARD F. SHEA
Senior United States District Judge